Filed 1/13/15  In re V.M. CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| In re V. M. et al., Persons Coming Under the Juvenile Court Law. | C076238 |
| THE PEOPLE, | (Super. Ct. Nos. JV135373, JV135375 ) |
| Plaintiff and Respondent, | |
| v. | |
| V. M. et al., | |
| Defendants and Appellants. | |

Minors 14-year-old V. M. (V.) and his sister 16-year-old T. M. (T.) appeal from a judgment of juvenile wardship and placement on six months' probation following the trial court's true findings that they deterred and resisted executive officers in the performance of their duties.  (A felony for V. and a misdemeanor for T.)

The facts behind the true findings were as follows:  Just before midnight on July 19, 2013, Sergeant William Ivey of the Cal Expo Police Department saw four or five

boys fighting behind the main entrance gate to the state fair. Sergeant Ivey told the boys they needed to leave the fair and started escorting them out toward the front gate. As the sergeant was escorting the boys out, another group of teenagers, who appeared to be friends with the fighting boys, joined up with them, and they all were now being escorted out of the fair together by Sergeant Ivey. There was a total of 18 to 20 teenagers in the crowd now (including V. and T.). Sergeant Ivey asked Elk Grove Police Officers Terry Cooley and Daniel Templeton and Cal Expo Police Officer Laura Hom, who were working at the fair on bicycles, to help him escort all the teenagers out.

As they were escorting the teenagers out, V. all of a sudden stopped and refused to move any further.[1] Officer Cooley told V., " 'Keep moving. You need to walk down to the sidewalk.' " V., who was within arms' reach of Officer Cooley, came toward the officer with his arms toward the officer. V. went over Cooley's bicycle handle bars and grabbed the officer around his waist, near his firearm and Taser. Using his elbow, Officer Cooley jabbed V. in the back three times to get V. to release his grip. Officer Templeton rushed over to help Officer Cooley and grabbed hold of V.'s left hand, which was near Templeton's firearm, and brought him to the ground. V. was handcuffed and then said, " 'I'm sorry. I give up.' "

Seeing what was going on between the officers and V., his sister T. "started going toward Officer Templeton and his group," "screaming, 'Get off my brother.' "[2] Officer Hom pushed her bike forward, attempting to block T. from going forward. T. went around the bike, and Officer Hom tackled her to the ground. As Hom was tackling T., T.

---

[1]     Sergeant Ivey did not know whether V. was also part of the group who were fighting.

[2]     T. was 10 to 15 feet from Officer Templeton and his group when she started going toward them.

was "fight[ing Hom]," trying to get up, and still screaming, " 'Get off my brother.' " T. was also arrested.

On appeal, the minors contend: (1) the People presented insufficient evidence they deterred or resisted the officers; and (2) the trial court abused its discretion in denying their motion to reopen the case, which they made during closing arguments. Disagreeing, we affirm.

DISCUSSION

I

*Sufficient Evidence Supported The Minors' True Findings*

Deterring or resisting an executive officer requires that a defendant "attempt[], by means of any threat or violence, to deter or prevent an executive officer from performing any duty imposed upon such officer by law, or . . . knowingly resist[], by the use of force or violence, such officer, in the performance of his duty." (Pen. Code, § 69.) A true finding for resisting executive officers in the performance of their duties requires that the officers be in the *lawful* performance of their duties. (*People v. Gonzalez* (1990) 51 Cal.3d 1179, 1217, superseded by statute on another point as stated in *In re Steele* (2004) 32 Cal.4th 682, 690.)

The minors both contend their true findings must be reversed because the officers who detained them were not acting lawfully at the time, as their detentions[3] were not based on reasonable suspicion that they were engaged in criminal activity. T. additionally contends her true finding must be reversed because she did not attempt to deter the officers and she did not specifically intend to interfere with the officers when she "was running to see her brother." "[S]he was merely attempting to find out what was

---

**3** The detentions to which the minors are referring were when the officers were escorting them out of the fair.

happening to her brother." She further argues that any attempt by her was not accomplished by threat or violence.

## A

### *The Minors Have Not Carried Their Burden As Appellants*
### *To Demonstrate The Officers Were Acting Unlawfully*

Focusing on their detention when they were being escorted out of the fair, the minors both contend the officers who detained them were not acting lawfully at the time, as their detentions were not based on reasonable suspicion that they were engaged in criminal activity.

This contention focuses too narrowly on only one function of police -- investigating criminal activity. But the police's function is not limited to investigating criminal activity. Rather, it also includes things such as "crowd control or public safety," which are "not the kind of [things] that involve[] suspicion, or lack of suspicion, of the relevant individual." (*Illinois v. Lidster* (2004) 540 U.S. 419, 424-425 [157 L.Ed.2d 843, 851].) Here, the minors were part of the 18 to 20 teenagers who police were escorting out of the fair. As appellants, the minors have the burden of showing insufficient evidence that the police were acting lawfully. Because they have focused too narrowly on only one aspect of a police officer's duty, without showing that there was no legitimate basis on which the officers were performing their other duties (such as crowd control or public safety), the minors have not carried their burden to show insufficient evidence.

## B

### *There Was Sufficient Evidence T. Violated Penal Code Section 69*

T. additionally contends her true finding must be reversed because there was no evidence she "attempt[ed], by means of any threat or violence, to deter or prevent an executive officer from performing any duty imposed upon such officer by law." (Pen. Code, § 69.) She claims she did not attempt to deter the officers and she did not

4

specifically intend to interfere with the officers when she "was running to see her brother." "[S]he was merely attempting to find out what was happening to her brother." She further argues that any attempt by her was not accomplished by threat or violence.

These arguments belie T.'s words and actions. From 10 to 15 feet away, T. "started going toward Officer Templeton" and the officers assisting with subduing V., "screaming, 'Get off my brother.' " The threat to the officers was that they should get off of her brother, and her action of running toward them from a very short distance away and circumventing the bike blockade showed her specific intent to interfere with the officers who were either detaining her brother or helping assist with that detention. (See *In re M. L. B.* (1980) 110 Cal.App.3d 501, 503 [" 'one of the persons in the crowd who was yelling, screaming and advancing on the officers in a threatening manner,' " was properly convicted of Penal Code section 69; "surrounding circumstances may establish the specific intent to interfere with the officer's performance of his duties"].) This interpretation of T.'s words and actions was confirmed by T.'s later actions during her own detention by Officer Hom when T. "f[ou]ght" Hom, tried to get up, and continued screaming, " 'Get off my brother.' " If T. was only trying to find out what was happening with her brother (which she already knew, because of what she was screaming), there would be no reason to fight the officer, to try to get up, and to scream get off of her brother.

## II

*The Trial Court Did Not Abuse Its Discretion In Denying The*

*Minors' Motion To Reopen The Case After All Sides Had Rested*

After all sides had rested and during V.'s closing statement, the attorney for V. announced that one of his "witness[es] ha[d] just arrived." The witness had been subpoenaed to appear the day before. When the witness failed to show up to court, V.'s counsel stated he was "not keen on asking for a bench warrant," and asked instead for a "stayed" bench warrant, which the court "[s]o ordered." The following day (before

5

closing arguments), the trial court asked about the witness, and V.'s counsel responded, "I'm not calling her to testify."  The People then said they had one rebuttal witness, Officer Cooley, and excused the other two officers, which the court did without objection from the minors.  Following Cooley's testimony, the court excused Cooley without objection as well.

It was after this evidence and during the closing argument for V. that V.'s counsel announced his witness was here.  V.'s counsel "ask[ed] for allowance to put her on the stand at this point," representing that "it will take twenty minutes at the most."  T.'s counsel joined in the request.  The People objected, stating they had excused the officers because of V.'s counsel's representation that the witness was not going to testify, and the People did not have the officers' phone numbers to get in touch with them.  The court denied the motion to reopen the case to call the witness, noting that the People had excused the officers.

Contrary to the minors' contentions on appeal, this denial was not an abuse of discretion.  "In determining whether a trial court has abused its discretion in denying a defense request to reopen, the reviewing court considers the following factors: '(1) the stage the proceedings had reached when the motion was made; (2) the defendant's diligence (or lack thereof) in presenting the new evidence; (3) the prospect that the jury would accord the new evidence undue emphasis; and (4) the significance of the evidence.' "  (*People v. Jones* (2003) 30 Cal.4th 1084, 1110.)

Here, these factors show there was no abuse of discretion.  The motion was made at a very late stage of the proceeding, during closing arguments.  Reopening the case would have prejudiced the People, who noted that their witnesses had been excused and they had no way of getting in touch with them at this late stage.  And the minors made no showing of the witness's significance, making it impossible to assess prejudice.

6

DISPOSITION

The judgment is affirmed.

        <u>     ROBIE        </u>, J.

We concur:

<u>     NICHOLSON     </u>, Acting P. J.

<u>     MURRAY       </u>, J.